In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00112-CV

                                                ______________________________

 

 

                                KERRI SUE HASS CULVER,
Appellant

 

                                                                V.

 

                                      BILLY RAY CULVER, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 402nd
Judicial District Court

                                                             Wood County, Texas

                                                          Trial Court
No. 2010-602

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            Kerri
Sue Hass Culver has filed a motion for rehearing.[1]  This opinion on rehearing is issued as a
substitute for our original opinion issued October 21, 2011.

            With an
action for divorce apparently pending,[2]
Billy Ray Culver sought and obtained a protective order against his wife,
Kerri.  Kerri appeals the protective
order, employing nine points of error. 
We affirm the trial court’s order based on our nine principal holdings:

            (1)  Issuing the protective order was not an abuse
of discretion,

            (2)  refusing Kerri’s motion for discovery was not
error,

            (3)  denying Kerri’s motions for continuance was
not error,

            (4)  this case is not reversible for ineffective
assistance of counsel,

            (5)  this case is not subject to the Brady[3]
rule,

            (6)  Kerri has not established misconduct by
opposing counsel,

            (7)  Kerri’s second motion to recuse did not
trigger mandatory referral,

            (8)  failing to file findings of fact and
conclusions of law was not reversible error, and

            (9)  we cannot reverse the trial court without reversible
error.

 

            Billy filed
an application for a protective order August 30, 2010, alleging Kerri had
committed family violence and would likely commit family violence in the
future.  Billy requested an order that
Kerri not commit family violence against Billy or Billy’s parents; not
communicate with any of those three; not go within 200 yards of any of the
three; not go within 200 yards of the residence, workplace, or school of any of
those three; and not stalk any of them. 
The application was accompanied by an affidavit alleging facts
constituting family violence.  The trial
court issued an ex parte temporary protective order and set a hearing on the
application for September 10, 2010. 
Notice of the application for protective order was served on Kerri
August 31, 2010.  On September 8,
2010, Kerri filed a general denial, a motion for discovery, and a motion for
continuance. 

            The trial
court’s hearing began September 10, 2010, with Kerri representing herself.  Billy’s application for a protective order was
prosecuted by the District Attorney’s Office on Billy’s behalf.  In the middle of the hearing, Kerri made an
oral motion to recuse the trial judge, alleging bias.  The district attorney argued the motion to
recuse was facially invalid and frivolous, as well as orally requesting an
extension of the ex parte temporary protective order.  The trial court refused to recuse, suspended
the hearing, and referred the matter to an administrative judge.  The administrative judge found the recusal
motion to be untimely and facially insufficient.  

            The hearing
resumed September 28, 2010, with Kerri represented by attorney Jeff Fletcher,
whom she had retained the day before. 
The trial court orally pronounced that it was granting a standard
protective order and orally admonished Kerri not to have contact with her
husband.  The original protective order
signed by the trial court was a boilerplate check-the-box form, but all of the
boxes were left blank except the box prohibiting possession of firearms.  

            The district
attorney filed a motion for judgment nunc pro tunc, which certifies that a copy
was delivered to Kerri.  The trial court
rendered a judgment titled “nunc pro tunc” September 29, 2010,[4]
which additionally prohibited Kerri from committing family violence against;
communicating with; going within 200 yards of; going within 200 yards of the
residence, workplace, or school of; and from stalking Billy and Billy’s
mother.  This protective order had the
same expiration date as the original temporary protective order—September 27,
2012.  On October 1, 2010, Kerri filed a
motion for new trial[5]
and was personally served with a copy of the judgment signed September 27,
2010.  On October 20, 2010, Kerri filed a
second request for recusal and a motion for continuance.  On October 25, 2010, Kerri filed a notice of
appeal.  On October 28, 2010,[6]
the trial court rendered a second judgment, denoted “nunc pro tunc,” adding
Bill’s father’s workplace to the list of places Kerri was prohibited from going
near.  On November 8, 2010,[7]
the trial court held a hearing, during which the district attorney acknowledged
Kerri did not have notice and was not present and at which the trial court
clarified that Fletcher had been appointed Kerri’s attorney in a criminal
proceeding, but was not appointed to represent her in the protective-order
case.

            While her
appeal was pending, Kerri filed a petition for writ of mandamus, which this
Court denied.  In denying mandamus
relief, we held that the two judgments “nunc pro tunc” corrected judicial mistakes
but, because the trial court still had plenary jurisdiction, were modified
judgments.  In re Culver, No. 06-11-00028-CV, 2011 Tex. App. LEXIS 2236 (Tex.
App.—Texarkana Mar. 29, 2011, orig. proceeding) (mem. op.).

1.         Issuing the Protective Order Was Not an
Abuse of Discretion

 

            In two of her points of
error, Kerri complains that the evidence is insufficient to support the
protective order.[8]

            Kerri argues
the evidence is factually insufficient because the 9-1-1 tape and police
reports “establishe[s] the opposite of a vital fact.”  The 9-1-1 recording and police reports were
not admitted into evidence.[9]  Kerri argues that Billy admitted he had not
been placed in fear of his life and that Kerri had plenty of time to hurt him
before the arrival of the police.  Billy,
though, was not required to prove he was placed in fear of his life.[10]  The statutory definition of “family violence”
required only that Billy was placed in fear of physical harm or bodily injury,
or that an assault had occurred.

            To be entitled
to a protective order under Title 4 of the Texas Family Code, Billy was
required to prove family violence had occurred and would likely occur in the
future.  Tex. Fam. Code Ann. § 85.001 (West 2008).  The Texas Family Code defines “family
violence” as 

  (1) an act by a member of a family or
household against another member of the family or household that is intended to
result in physical harm, bodily injury, assault, or sexual assault or that is a
threat that reasonably places the member in fear of imminent physical harm,
bodily injury, assault, or sexual assault, but does not include defensive
measures to protect oneself;

 

 
(2) abuse, as that term is defined by Sections 261.001(1) (C), (E), and
(G), by a member of a family or household toward a child of the family or
household; or

 

 
(3) dating violence, as that term is defined by Section 71.0021.

 

Tex. Fam. Code Ann.
§ 71.004 (West 2008).

 

            Because
a protective order is in the nature of a civil injunction,[11]
this Court has held a protective order should be reviewed for an abuse of
discretion.  See In re Epperson, 213 S.W.3d 541, 542–43 (Tex. App.—Texarkana
2007, no pet.) (noting split of authority). 
A trial court abuses its discretion if it acts without reference to any
guiding rules and principles or reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.  See
Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex. 1985).

            Billy
introduced sufficient evidence that Kerri committed an act intended to result
in placing Billy in fear of imminent physical harm, bodily injury, or
assault.  Billy testified[12]
concerning an argument he and Kerri had “at the house she owns in Enchanted
Lakes” concerning “her involvement in dog rescue and it consuming our life
completely.”  Billy left and started
walking “towards Mineola” on the “blacktop road back towards 69.”  Billy testified Kerri was “hysterical” and
followed him in a car.  According to
Billy, Kerri “started basically trying to run me off the road to make me stop
and then she came close to hitting me a couple of times.”  Billy testified that Kerri ran him into the
ditch several times and that he had to walk into the woods to get around her
car.  When he was able to get a cell
phone signal, Billy called the police. 
Billy stayed on the phone with the police dispatcher until the police
arrived approximately forty-five minutes later. 
When asked, “Were you in fear that you were going to be struck with that
vehicle,”  Billy responded, “At several
times, yes, sir.”  Billy admitted, on
cross-examination, the police did not arrest Kerri, but merely told her to go
home and then gave Billy a ride to his parents’ house.  When asked, during cross-examination at the
second hearing, “[W]e can agree that if she wanted to run over you with her
car, she could have gotten that done that day, couldn’t she?”  Billy responded, “I suppose she could.”  The trial court could have reasonably
concluded Kerri’s actions caused Billy to fear imminent bodily injury.

            Billy also
introduced evidence that Kerri had assaulted him.  This Court has held “[t]he definition of
assault is the same, whether in a civil or criminal trial.”  Rogers
v. Peeler, 146 S.W.3d 765, 769 (Tex. App.—Texarkana 2004, no pet.); see Waffle House, Inc. v. Williams, 313 S.W.3d 796, 801 n.4 (Tex. 2010).  A person commits assault under the Texas
Penal Code if the person intentionally, knowingly, or recklessly causes bodily
injury to another, intentionally or knowingly threatens another with imminent
bodily injury, or intentionally or knowingly causes physical contact when the
person knows or should reasonably believe the other will regard such contact as
offensive or provocative.  Tex. Penal Code Ann. § 22.01 (West
2011).

            On August
18, 2010,[13] Kerri showed
up at Billy’s parents’ house and entered uninvited through the back door.  When asked to leave, Kerri did leave, but
returned approximately ten minutes later. 
Kerri entered the house a second time, “chased [Billy] around the dining
room table,” and then chased Billy into the back yard.  Billy called the police.  Billy testified that, on this occasion, Kerri
threw her telephone, which hit him “in the back shoulder.”  Billy testified the phone caused “physical
pain.”  Billy testified, during
cross-examination, that he told the police that he did not want Kerri to go to
jail, that he did not want to file a report, and that he just wanted Kerri to
leave.  The fact that Billy suffered only
physical pain does not prevent the act from being an assault.  The term “bodily injury” is defined as
“physical pain, illness, or any impairment of physical condition.”  Tex.
Penal Code Ann. § 1.07(a) (8) (West 2011).  Further, Kerri should have known Billy would
regard being hit in the shoulder by a telephone as offensive.  The trial court could have reasonably
concluded Kerri assaulted Billy.

            Billy also
introduced sufficient evidence for the trial court to conclude family violence
would occur in the future.  Billy
testified he had been stalked by Kerri, who had followed Billy to a mall in
Sulphur Springs,[14] where they
argued.  When asked, since the August 18
incident, the number of times Kerri “has appeared uninvited around [him],”
Billy testified that “[t]hey are too numerous” and explained:

She drives by at all hours of the day
and night.  She leaves messages,
telephone calls.  I never know if she’s
going to walk up behind me in any store. 

 

The trial court could have reasonably concluded family
violence was likely to occur in the future.

 

            The trial
court could reasonably conclude Billy was testifying truthfully.  The credibility of witnesses is within the
sole province of the fact-finder.  Walker & Assocs. Surveying v. Austin,
301 S.W.3d 909, 916 (Tex. App.—Texarkana 2009, no pet.).  The trial court did not abuse its discretion
in finding that family violence had occurred and would likely occur in the
future.  We overrule Kerri’s points of
error attacking the sufficiency of the evidence.

2.         Refusing Kerri’s Motion for Discovery
Was Not Error

 

            In one point of error,
Kerri contends the trial court erred in failing to grant her motion for
discovery.  Kerri filed a motion for
discovery two days before the hearing in which she requested that Billy provide
her with “all evidence including audio, video, photographs, written reports,
etc. that he intends to enter as evidence in the above referenced cause.”  The record does not contain any ruling on
this motion.[15]

            Kerri has
not directed this Court to any specific provision for discovery in proceedings
relative to protective orders, which are placed on an extremely expedited
schedule.  An ex parte temporary
protective order expires within twenty days (although it may be “extended for
additional 20-day periods”), and Section 84.001 provides that a hearing on an
application for a protective order should occur within fourteen days.  Tex.
Fam. Code Ann. §§ 83.002, 84.001 (West 2008).  

            In the
absence of a specific provision, the general discovery provisions of the Texas
Rules of Civil Procedure would apply.  See Tex.
R. Civ. P. 190–215.6.  The record
does not contain any court order modifying the default deadlines for discovery
or any request for such order.  Assuming
discovery is available, given the expedited schedule and lack of a specific
discovery provision granting discovery in the context of protective orders, the
trial court did not err in failing to rule on Kerri’s motion for discovery.  Without a request and showing of good cause
to modify the default discovery deadlines, Kerri’s motion for discovery was not
timely.  A request for production must be
filed thirty days before the end of the discovery period, which ends thirty
days before trial.  See Tex. R. Civ. P.
190.3, 196.1.  While we recognize this
deadline was impossible to comply with under the expedited trial schedule for
applications for protective orders, this deadline applies in the absence of a
court order modifying the default deadlines. 
Since the record does not contain any such court order, agreement, or
other modification of the discovery deadlines, Kerri’s motion was not
timely.  We overrule Kerri’s point of
error regarding the motion for discovery.

3.         Denying Kerri’s Motions for Continuance
Was Not Error

 

            In her first
and second points of error, Kerri also complains about the trial court denying
her motions for continuance.  In her
first, second, and fourth points of error, Kerri claims the trial constituted
“trial by ambush.”  Kerri filed her first
motion for continuance two days before the first hearing.  In this motion, Kerri alleges that she had
filed “open records request[s] with multiple law enforcement agencies” and
sufficient time had not passed to obtain the documents.  The day before the hearing was scheduled to
resume following disposition of Kerri’s motion to recuse, Kerri filed a second
motion for continuance that alleged she had “hired counsel today to represent her
in this matter and counsel has not and will not have adequate time to prepare
for trial before tomorrow.”[16]

            We
review the decision to grant or deny a motion for continuance for an abuse of discretion.
 Villegas
v. Carter, 711 S.W.2d 624, 626 (Tex. 1986); In re A.D.A., 287 S.W.3d 382, 387 (Tex. App.—Texarkana 2009, no
pet.).  The Texas Rules of Civil
Procedure state that a continuance shall not be granted “except for sufficient
cause supported by affidavit, or by consent of the parties, or by operation of
law.”  Tex.
R. Civ. P. 251.  Neither motion
for continuance was accompanied by an affidavit, and there is no indication in
the record that Billy consented to either motion.  The trial court did not abuse its discretion
in denying the motions for continuance.  See In
re R.A.L., 291 S.W.3d 438, 448 (Tex. App.—Texarkana 2009, no pet.).

4.         This Case Is Not Reversible for
Ineffective Assistance of Counsel

 

            The
doctrine of ineffective assistance of counsel does not apply to civil cases
where there is no constitutional[17]
or statutory right to counsel.  See,
e.g., McCoy v. Tex. Instruments, Inc., 183 S.W.3d 548, 553 (Tex.
App.—Dallas 2006, no pet.); Cherqui v.
Westheimer St. Festival Corp., 116 S.W.3d 337, 343 (Tex. App.—Houston [14th
Dist.] 2003, no pet.); cf. In re M.S.,
115 S.W.3d 534, 544 (Tex. 2003) (“[T]he statutory right to counsel in
parental-rights termination cases embodies the right to effective counsel.”).  Kerri has not provided this Court with any
authority that there is a right to effective assistance of counsel in a
protective order case—and we are not aware of any.  We overrule this point of error.

5.         This Case Is Not Subject to the Brady Rule

 

            In two
points of error, Kerri argues that the State withheld exculpatory evidence and
cites Brady, 373 U.S. 83.  Under Brady,
a prosecutor in a criminal proceeding has an affirmative duty to disclose
exculpatory evidence when a defendant timely files a “Brady” motion.  Id. 
Kerri did not file a “Brady”
motion.  Further, Kerri has not provided
this Court with any authority that Brady
is applicable to a protective order proceeding—a civil proceeding—and we are
not aware of any.  We overrule these
points of error.

6.         Kerri Has Not Established Misconduct by
Opposing Counsel

 

            In two
points of error, Kerri complains that the district attorney’s office engaged in
prosecutorial misconduct and “trial by ambush.” 
Other than citing criminal cases and Rule 806 of the Texas Rules of
Evidence,[18] Kerri has not
provided this Court with any authority concerning this issue.[19]  As noted above, this case is a civil
proceeding.

            To the
extent the district attorney’s office may have had a duty to see that justice
was done, Kerri has failed to allege any facts constituting prosecutorial
misconduct.  Kerrie argues “[n]ot only
did the prosecutor know the state’s witness was committing perjury, the
prosecutor made a barrage of allegations against Appellant . . . .”  Kerri also complains about the district
attorney’s characterization of her conduct as “bizarre and dangerous” during
his rebuttal closing argument.  During
closing argument, the district attorney argued there had been “several
violations of Texas law” and “domestic violence in the past.”  No specific allegations were made.  In its rebuttal closing argument, the
prosecutor’s argument was as follows, in its entirety:

            Ms. Kerri Sue Hass’ behavior is
bizarre and dangerous, from filing a motion to dismiss a divorce to
persistently acting in contempt of this court, and finally making a threat, you’re
going to hurt somebody.  Mr. Culver is
exercising his legal right to bring an action before this court and he’s been
threatened for it.

            And her behavior in stalking him,
showing up at her mother-in-law’s house uninvited, interfering with 911 calls,
using a car in an aggressive manner, and persistently violating this court
order indicates she is a danger and should not have firearms, and we shouldn’t
reach the point if she wanted him hurt, then he would have been in a ditch.

            If we want him protected and not to
be the subject of this threat and actually be hurt, then we need the protective
order.  That’s the logic.  We have domestic violence in the past.  There’s a real threat that it will happen in
the future.  The State moves for
protective order.

 

While the district attorney’s
choice of words—”bizarre and dangerous”—are harsh, the choice does not
constitute error.  We note no objection
was made to the district attorney’s argument.[20]  Further, “[c]ounsel should be allowed wide
latitude in arguing the evidence and reasonable inferences to the jury.”  Anderson
v. Vinson Exploration, 832 S.W.2d 657, 667 (Tex. App.—El Paso 1992,
writ denied).

            Kerri also
takes issue with the reference to past domestic violence.  As explained above, the statutory definition
of family violence does not require actual physical injury.  The district attorney’s statement was a
reasonable interpretation of the evidence. 
The district attorney’s reference to the motion to dismiss the divorce
may have referred to facts not admitted into evidence.[21]  This reference does not, however, constitute
prosecutorial misconduct, and no objection was made to this statement.  The error, if any, has not been preserved for
appellate review.  Tex. R. App. P. 33.1.  Other than the divorce reference, the
prosecution’s argument consists of a permissible interpretation of the evidence
presented at the hearing.

            Kerri’s
remaining complaint concerns the trial court sustaining Billy’s evidentiary
objection to her use of the 9-1-1 recording of July 29, 2010.  As discussed above, any error concerning the
exclusion of these pieces of evidence has not been preserved for review.

            We overrule
Kerri’s points of error alleging prosecutorial misconduct.

 

7.         Kerri’s Second Motion to Recuse Did Not
Trigger Mandatory Referral

 

            Kerri
also complains that the trial court failed both to refer her second motion to
recuse to an administrative judge and to refrain from making any further
rulings while the motion was pending.[22]  Kerri’s second motion to recuse, which was
not verified, was filed October 20, 2010. 
On October 28, 2010, the trial court signed a second modified
judgment.  Kerri alleges the trial court
failed to refer the second recusal motion to an administrative judge and
refused to refrain from making any additional rulings while the motion was
pending, rendering the modified judgment signed October 28, 2010 void.[23]  Under Rule 18a, a trial court is required to
either recuse or refer the motion to an administrative judge.  Tex.
R. Civ. P. 18a(c), (d).  However,
a motion requesting recusal must be filed at least ten days before trial and
must be verified.  Tex. R. Civ. P. 18a(a).  The mandatory referral provisions do not come
into play when the motion is not filed ten days before trial.  Spigener
v. Wallis, 80 S.W.3d 174, 181 (Tex. App.—Waco 2002, no pet.); Autry v. Autry, 646 S.W.2d 586, 588
(Tex. App.—Tyler 1983, no writ).  Kerri’s
second motion to recuse was filed approximately three weeks after the hearing
concluded and Kerri has not alleged any exception to this general rule.[24]  Further, Kerri’s motion was not verified and,
thus, did not comply with Rule 18a.  See Tex.
R. Civ. P. 18a.  The trial court
did not err in failing to refer this unverified and untimely motion to an
administrative judge and was not prohibited from making any further rulings.

8) 
Failing To File Findings of Fact and Conclusions of Law Was Not
Reversible Error

            Kerri complains that
the trial court failed to file findings of fact and conclusions of law.  On October 25, 2010, Kerri requested findings
of fact and conclusions of law.  Although
requests for findings of fact and conclusions of law filed before the trial
court’s modified judgment are premature, Rule 306c provides that such requests
shall be deemed filed on the date of, but subsequent to, the judgment.  Tex.
R. Civ. P. 306c.  On December 14,
2010, Kerri filed a notice of past due findings of fact and conclusions of
law.  “ Following a proper request and
reminder, it is mandatory for a trial court to make and file findings of fact
and conclusions of law.”  In re Grossnickle, 115 S.W.3d 238, 253
(Tex. App.—Texarkana 2003, no pet.). 
Failing to file findings of fact and conclusions of law was error.

            The
error, though, is not reversible. 
Although “harm to the complaining party is presumed unless the contrary
appears on the face of the record,” a trial court’s “failure to make findings
is not harmful error if ‘the record before the appellate court affirmatively
shows that the complaining party suffered no injury.’”  Tenery
v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996) (quoting Cherne Indus. v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989)); Las Vegas Pecan & Cattle Co. v. Zavala
County, 682 S.W.2d 254, 256 (Tex. 1984). 
When the trial court announces its reasons for its ruling in open court,
the appellant’s ability to present the appeal is not harmed because there was
no need to guess the reasons for the trial court’s adverse ruling.  See, e.g., Sagemont Plaza Shopping ex rel. O’Connor & Assocs. v. Harris County
Appraisal Dist., 30 S.W.3d 425, 427 (Tex. App.—Corpus Christi 2000, pet.
denied) ; Tex. Workers’ Comp. Ins. Fund
v. Ashy, 972 S.W.2d 208, 210–12 (Tex. App.—Beaumont 1998, pet. denied); Elizondo v. Gomez, 957 S.W.2d 862, 865
(Tex. App.—San Antonio 1997, writ denied). 
In this case, the trial court announced its reasons for the ruling in
open court, stating that domestic violence had occurred and would likely occur
in the future.  The trial court’s
statements on the record clearly provide the basis for its ruling.  On appeal, Kerri has not explained how she
was prevented from properly presenting the case to this Court.  The trial court’s error did not result in
reversible error.  See Tex. R. App. P.
44.1.

9.         We Cannot Reverse the Trial Court Without
Reversible Error

 

            Kerri also
asserts that the modified judgments are void. 
Billy agrees with her, states that Kerri received inadequate notice, and
requests this Court reverse the judgments of the trial court.

            The trial
court rendered judgment September 28, 2010, and then, while it retained plenary
jurisdiction, signed two modified judgments, respectively dated September 29,
2010, and October 28, 2010.

            Billy
assumes, as argued by Kerri, that the “modified judgments” are modifications of
a protective order under Chapter 87 of the Texas Family Code and that
inadequate notice was provided under Section 87.003.  See
Tex. Fam. Code Ann. §§ 87.001,
87.003 (West 2008).  Although this Court
has held the judgments signed September 29, 2010, and October 28, 2010, are
“modified” judgments,[25]
this Court has not held they were modifications within the meaning of, and
subject to the provisions of, Chapter 87 of the Texas Family Code.  We are not aware of any authority that
Chapter 87 must be satisfied to modify a protective order under Rule 329b of
the Texas Rules of Civil Procedure, in situations, within the plenary power of
the trial court, in which there is no new evidence taken or a new hearing held.  We believe that a trial court may modify a
protective order over which it still has plenary power in the same manner as
any other judgment.  If the trial court’s
plenary jurisdiction had expired, Chapter 87 might apply depending on the
circumstances.  Because the trial court’s
plenary jurisdiction had not expired, the trial court could modify the judgment
without complying with Section 87.003. 
The judgment signed October 28, 2010, was not a modification of an
existing protective order within the meaning of Chapter 87—it did not include
new substantive changes based on new evidence of changed conditions—rather, it
was a modification of the protective order within the plenary power of the
trial court, based on the original evidence and hearing—an important
distinction.

            In addition,
Kerri argues her due process rights were violated.  Billy also agrees that a due process
violation has occurred, reasoning that Section 87.003 of the Texas Family Code
requires a hearing and that due process requires notice and an opportunity to
be heard at a meaningful time and in a meaningful manner.  Kerri was provided with notice of the hearing
in this cause, and the hearing provided Kerri an opportunity to be heard at a
meaningful time and a meaningful manner. 
Because a trial court may modify a judgment while it still has plenary
jurisdiction pursuant to Rule 329b of the Texas Rules of Civil Procedure,
we conclude that the trial court was not required to hold an additional hearing
to vacate, set aside, modify, or amend the judgment under that rule.  Kerri has not established a violation of her
due process rights.

            But does
Billy’s “concession” that reversible error occurred require this Court to
reverse the judgments of the trial court even in the absence of reversible
error?  Billy, the appellee, has not
requested that we affirm the judgment of the trial court.  Instead, Billy requests this Court to reverse
the judgments of the trial court and remand for further proceedings.  Ordinarily, a party is not entitled to relief
which has not been requested.  See,
e.g., Horrocks v. Tex. Dep’t of
Transp., 852 S.W.2d 498, 499 (Tex. 1993); In re Estate of Wilson, 252 S.W.3d 708, 715 (Tex. App.—Texarkana
2008, no pet.).  The Texas Supreme Court,
though, has held “[a] reviewing court can reverse only when there is error in
the judgment of the court below.”  Davis v. Bryan & Bryan, Inc., 730 S.W.2d 643, 644 (Tex. 1987); Chrisom v. Brown, 246 S.W.3d 102, 116 (Tex. App.—Houston [14th Dist.] 2007,
no pet.).  In the absence of reversible
error, we are prohibited from reversing the judgment of the trial court.

            We
overrule the motion for rehearing.  We
affirm the trial court’s judgment.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          October
3, 2011

Date Decided:             December
15, 2011

 











[1]Kerri’s
request for an en-banc rehearing is overruled as moot.  As a court of appeals with three justices,
every opinion of this Court is en banc.

 





[2]The
record indicates a divorce was pending, but does not specify the status of the
divorce proceeding.  A protective order
issued in the context of a divorce proceeding cannot be appealed until the
divorce is final.  See Tex. Fam. Code Ann.
§ 81.009(b) (West
2008).  The application in this case was
not filed as a motion in a suit for dissolution of a marriage.  Whether this section applies in this case has
not been assigned for our review by the parties.  This Court has held protective orders
rendered in separate cause numbers and treated entirely separate from any
divorce proceedings are not governed by Section 81.009.  See
Davis v. Davis, No. 06-07-00059-CV, 2007 Tex. App. LEXIS 4298 (Tex.
App.—Texarkana June 1, 2007, no pet.) (mem. op.).

 





[3]Brady v. Maryland, 373 U.S. 83 (1963).





[4]In
her motion for rehearing, Kerri alleges that, because the two judgments filed
September 28 and 29, 2010, each contain the same date and signature, the
September 29 judgment is “merely a photocopy” of the September 28 judgment and
does not have “an original signature by the trial judge.”  Kerri claims that the October 28 modified
judgment was entered “because the trial court noticed it had not actually
signed the September 29, 2010 modified judgment.”  The two judgments filed September 28–29 are
both dated September 28 and contain identical times and signatures.  The two judgments, however, contain
substantive differences.  All of the
boxes in Section 4 of the judgment filed September 28, except the box
prohibiting possession of firearms, were left blank.  The various boxes were checked in the
judgment filed September 29.  The record
contains a motion for judgment nunc pro tunc filed by Billy September 29.  The judgment filed September 29 is not merely
a photocopy of the September 28 judgment. 
Kerri did not complain about this issue before our original opinion in
this case.  In fact, Kerri’s appellant’s
brief contains the following statement:  “On
September 29, 2010, one day later, the trial court entered a Nunc Pro Tunc
Order in the same cause without holding a hearing.”  Kerri has waived any complaint concerning
this irregularity.  Besides, this issue
would have no effect on any issue argued on appeal.

 





[5]The
motion for new trial did not contain an accompanying affidavit.  The record contains an order setting a
hearing on the motion for new trial to be held October 21, 2010.  Neither the docket sheet, nor anything in the
record indicates any hearing was held that date.  

 





[6]Because
Kerri had filed a motion for new trial, the trial court’s plenary jurisdiction
had been extended.  Tex. R. Civ. P. 329b.

 





[7]The
front page of the reporter’s record of this hearing specifies that it occurred
September 28, 2010.  The third page of
the reporter’s record and the docket sheet, though, specify that this hearing
occurred November 8, 2010.

 





[8]Kerri
argues she is a disabled person living on a fixed income.  Kerri alleges Billy left her while she was
pregnant, the couple was over $20,000.00 in debt, the couple’s land was in
foreclosure, and their residence’s electricity was cut off.  While we sympathize with Kerri’s claimed
hardships, we note these facts are not in the record.  On cross-examination, Billy admitted he had
told the police that Kerri had a disability, receives “SSI disability,” and had
not been taking her medication at the time of the Enchanted Lakes incident, the
incident in which Kerri was driving, Billy was walking, and Kerri got
aggressive with the vehicle.  Although
Kerri made some of the remaining factual statements on the record, Kerri was
not testifying at the time.





[9]Kerri
attempted to enter into evidence a “copy of the 911 recording” (presumably from
the Enchanted Lakes incident) and Billy objected, stating, “[I]t’s not properly
authenticated.”  The trial court
sustained Billy’s objection.  Kerri also
attempted to have Billy read the police report. 
The trial court sustained the State’s objection that the report was
hearsay.  To challenge the exclusion of
evidence, a party must:  (1) attempt to
introduce the evidence; (2) if an objection is made, specify the purpose for
which the evidence is offered and give the trial court reasons why the evidence
is admissible; (3) obtain a ruling from the court; and (4) if the court rules
the evidence inadmissible, make a record, either through an informal offer of
proof or a formal bill of exceptions, of the evidence the party desires
admitted.  See Tex. R. App. P.
33.2; Tex. R. Evid. 103; see also Bobbora v. Unitrin Ins. Servs.,
255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.); Fletcher v. Minn. Mining & Mfg. Co., 57 S.W.3d 602 (Tex. App.—Houston
[1st Dist.] 2001, pet. denied).  Kerri
failed to specify to the trial court why both pieces of evidence were admissible.  Kerri also did not make an offer of proof or
file a formal bill of exceptions.  Although
Kerri was proceeding pro se at the time of the objection, it is
well-established that a pro se litigant “must comply with all applicable
procedural rules” and is held to the same standards as a licensed
attorney.  Weaver v. E-Z Mart Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.—Texarkana
1997, no pet.).  At the second hearing,
Kerri’s counsel—who had one day to prepare—attempted to have Billy authenticate
the 9-1-1 recording by reading the date and cause number printed on it.  The district attorney objected again, and the
trial court sustained the objection.  Again,
the trial court was not provided with reasons why the evidence was admissible,
and no attempt to make an offer of proof or file a bill of exceptions was
made.  Any error in these rulings has not
been preserved for appellate review.

 





[10]Kerri
argues Billy was required to prove he was placed in fear of his life, citing Thompson v. Thompson-O’Rear,
No. 06-03-00129-CV, 2004 Tex. App. LEXIS 5033 (Tex. App.—Texarkana June 8,
2004, no pet.).  In that case, this Court
did not hold fear of death was required. 
In Thompson, this Court held
the evidence did not establish the acts alleged “reasonably place[d] one in
fear of imminent physical harm or bodily injury.”  Id.  As discussed below, the evidence is
sufficient in this case, and Thompson
is distinguishable from this case.





[11]See Tex.
Fam. Code Ann. § 88.002(5) (West 2008).

 





[12]Kerri
alleges “[t]he only evidence that Mr. Culver offered was his testimony which
was hearsay.”  “‘Hearsay’ is a statement,
other than one made by the declarant while testifying at the trial or hearing,
offered in evidence to prove the truth of the matter asserted.”  Tex.
R. Evid. 801(d).





[13]Kerri
alleges she went to the house to retrieve a trailer Billy had taken without her
permission.  Kerri claims when she
contacted the police to report the stolen trailer, the police instructed her to
contact Billy since it was registered to him. 
Kerri did not testify at the hearing. 
Billy testified he took a trailer August 17, 2010, because it “contained
personal property of mine.”

 





[14]When
Billy noticed Kerri following him, he contacted the sheriff’s department, who
escorted Billy out of town until it appeared Kerri was “headed back to Mineola.”  Kerri, though, later appeared at the mall.





[15]Nothing
shows that this motion was ever brought to the attention of the trial court.





[16]At
the time this motion for continuance had been filed, approximately twenty-eight
days had passed since her original notice of the application for a protective
order and twelve days had passed since she received notice of the date trial
would resume.  To the extent Kerri’s
newly retained counsel was not prepared for trial, the fault lies with Kerri
choosing not to retain counsel until the eve of the hearing.

 





[17]“The
Sixth Amendment grants an indigent criminal defendant the right to counsel,” but
does not apply to civil cases.  Turner v. Rogers, ___ U.S. ___, 131
S.Ct. 2507, 2510 (2011).  In a civil
case, the right to counsel under the Due Process Clause is determined by
conducting an analysis to determine “whether the ‘specific dictates of due
process’ require appointed counsel.” Id.
(quoting Mathews v. Eldridge, 424
U.S. 319, 335 (1976)).  In making this
determination, courts should consider the Eldridge
factors, which include:

 

(1)
the private interest that will be affected by the official action; (2) the risk
of an erroneous deprivation of such interest through the procedures used, and
probable value, if any, of additional procedural safeguards; and (3) the
Government’s interest, including the fiscal and administrative burdens that the
additional or substitute procedures would entail.

 

Eldridge,
424 U.S. at 335; see Turner, 131 S.Ct. at 2510.





[18]Kerri’s
citation is “TRCP 806.”  The abbreviation
TRCP generally refers to the Texas Rules of Civil Procedure.  Rule 806 of the Texas Rules of Civil
Procedure concerns a claim of improvements in a trespass-to-try-title
action.  See Tex. R. Civ. P.
806.  We assume Kerri is referring to
Rule 806 of the Texas Rules of Evidence. 
SeeTex. R. Evid. 806.

 





[19]This
issue could be overruled as inadequately briefed.  See
Tex. R. App. P. 38.1(h).





[20]To
establish that an improper jury argument is reversible error, an appellant must
prove:  (1) an improper jury argument;
(2) the improper argument was not invited or provoked; (3) the error was
preserved; and (4) “the error was not curable by an instruction, a prompt withdrawal
of the statement, or a reprimand by the trial court.”  Standard
Fire Ins. Co. v. Reese, 584 S.W.2d 835, 839 (Tex. 1979); Lone Star Ford, Inc. v. Carter, 848
S.W.2d 850, 853 (Tex. App.—Houston [14th Dist.] 1993, no writ).

 





[21]Our
review of the record reveals no evidence concerning this allegation.





[22]Kerri’s
first motion to recuse was untimely.  Out
of an abundance of caution, the trial court referred the first motion to recuse
to an administrative judge and refrained from making any further rulings until the
first motion to recuse had been disposed of.

 





[23]Unlike
disqualification, “the erroneous denial of a recusal motion does not void or
nullify the presiding judge’s subsequent acts.” 
In re Union Pac. Res. Co., 969
S.W.2d 427, 428 (Tex. 1998) (orig. proceeding).

 





[24]Even
if Kerri had argued an exception, the motion was not filed as soon as possible
after she learned of the “grounds” for recusal. 
Thus, even if an exception applied, the motion would still be
untimely.  While this case was on appeal,
the trial court referred this motion to the administrative judge, and the
motion was denied as “untimely and facially insufficient.”





[25]Culver, 2011 Tex. App. LEXIS 2236.